Good morning. My name is Violet Edelman and I'm representing Nathan Garley. I hope to reserve two minutes of my time for rebuttal. The district court in this case imposed a significant upward variance for a fentanyl offense based on an erroneously calculated hypothetical guideline range for methamphetamine. Because the district court did not offer any explanation for why methamphetamine is an appropriate substitute for fentanyl, the sentence is substantively unreasonable. The district court's explanation was limited to its expression of a view that fentanyl should not be treated less seriously than methamphetamine, but that statement does not address how the methamphetamine guideline better serves the 3553A factors for a fentanyl offense than the fentanyl guideline. Well, is it obvious? You know, the severity of the offense, the district court treated fentanyl as a more insidious drug than methamphetamine actual and so, you know, treating it as less harmful struck the district court as illogical. Well, that is what the district court said, but that doesn't actually explain why methamphetamine, why the guidelines calibrated to methamphetamine actual better serve the purposes in terms of fentanyl. And it also neglects sort of the large universe of things that the commission typically looks at and that other courts will look at when voicing a policy disagreement and using some other guideline or metric in its place. Because it's not just as simple as a sheer raw number of deaths. It's a holistic analysis. Why not? Well, that seems to me to be a very reasonable way to compare. If one is more deadly than the other, then it shouldn't be less severe under the guidelines. Well, why is that not a reasonable analysis by the court? Because, for example, when the commission conducts an analysis of drugs, harms caused by drugs, it will look at deadliness, but it also looks at dosage and the pharmacological makeup and effects and market dynamics and associated violence, prevalence of use, rate of ER hospital visits and deaths relative to the number of reported users and other collateral consequences, and importation and trafficking patterns. So the dangerousness of a drug, it doesn't just come down to a simple number of deaths caused in a number of years. So it seems to me that what is confusing to me about your substantive reasonableness challenge is it feels like a procedural reasonableness challenge. And especially, and I will tell you how I'm thinking about it, I know our cases like Crosby most recently find some gray there and there is a way to make this argument about failure to explain in the substantive reasonableness context. It's not the gall type of procedural error context. But your argument seems to suggest that the district court made some sort of clearly erroneous conclusion about dangerousness. And it just, you know, sentencing based on erroneous facts is not a substantive reasonableness argument. So help me understand how to receive your argument properly as a substantive reasonableness challenge that is not subject to procedural reasonableness law. Okay, yes. So as you mentioned, the inquiries are overlapping and an inadequate explanation will sometimes result in a substantively unreasonable sentence because the question when we're looking at substantive reasonableness is really whether the court grounded the term that it chose by reference to its explanation, whether the length was appropriate in light of that explanation. I don't think this really is a procedural question because it's not about an improper calculation of the guideline range. The district court properly calculated the fentanyl guideline range. But then what it did is it invoked this policy disagreement and then pulled in the methamphetamine guidelines as the justification for the length that it chose. Well, it didn't fail to explain. It just, you don't, you know, and maybe righteously so with the explanation. And I think we have a very narrow lane in which to receive procedural error-like arguments as substantive reasonableness arguments. Well, I think that this court's decisions in Crosby and in Cookson before it discussed the use of a policy disagreement in the substantive reasonableness consideration because it's really, my issue with his use of the methamphetamine guideline is he didn't justify why it was appropriate. And so it doesn't substantiate the length of imprisonment that he imposed. I think Kimbrough offers a guide for how courts are supposed to express a policy disagreement. And when they vary based solely on a view about the inadequacy of a guideline, this court applies closer review to what they did and the explanation offered. Now, as I understand it, the reason we care whether it's a substantive reasonableness or procedural reasonableness is we seem to be saying if it's substantive reasonableness, then it doesn't have to be preserved. And I'm not sure that's the way to read the Supreme Court law on that. What they said is if you're arguing that's too long, that preserves a substantive reasonableness argument. But it did not decide that there aren't components of a substantive reasonableness argument that need to be preserved. And here, just in our general preservation jurisprudence, if you think the judge is making a mistake by equating fentanyl with methamphetamine, you should say so. That gives the judge a chance to explain more. So however you want to label it, isn't this the sort of argument that should have been made to the judge so the judge could explain rather than coming up here and sending it back down for more explanation? Well, I think that the judge's instinct to utilize an alternative guideline or explain a variance by reference to a different provision in the guidelines is correct when it's voicing a policy disagreement. I think the issue here is that it didn't substantiate the sentence because he just looked at the methamphetamine range and then said, oh, so this is why I'm going to give 240 months. But you didn't argue that to the judge at trial, though, at sentencing, did you? No, but I will. The point I'm making is that you like defense attorneys naturally like to categorize as much as possible as a substantive reasonableness challenge because then you don't have to preserve. And I think that's misreading the Supreme Court. It's overreading what the Supreme Court said. This is the sort of argument that could have been resolved in district court by arguing to the district court. You haven't explained that. And that's the sort of thing that should be preserved. And we should be, therefore, reviewing this for plain error, however you want to characterize the issue. Well, I think this court's cases make clear that the question of whether a policy disagreement justifies a sentence does belong in the substantive reasonableness review. So what? Even if it's substantive reasonableness, a lot of these substantive reasonableness arguments should, if you want to characterize it as that, need to be preserved. Just look at our general jurisprudence on preservation. If it's something that you can tell the judge who's ruling you're making a mistake here and perhaps cure it, then it needs to be preserved. If you're just saying, judge, that's too harsh a penalty, that's something you've adequately preserved by arguing against the sentence. I don't think the Supreme Court, at least, has gone nearly as far as you have in saying, well, this is substantive reasonableness, so it doesn't need to be preserved. So we don't review for plain error, review for abuse of discretion, or whatever. I understand that point of view. I would say that this court's cases also say that when there is an issue in the explanation and the explanation doesn't adequately set forth the reasons for the specific term chosen, it impedes review, and so it makes it more likely that the sentence is substantively unreasonable because this court then can't tell where the district court came up with the number that it chose. But in those cases, the problem was, as it often is in substantive reasonableness cases, an over-reliance on a particular factor. You look at the district court, you know, sort of puts 3553A to the side, maybe gives lip service to it, and just says, I don't care about anything else except fentanyl is very bad. But the failure to explain cases are different. I mean, so it seems we would have to, to understand your argument as a substantive reasonableness challenge, we would have to agree, I think, and tell me if I have this wrong, that the district court was focused on the dangerousness of fentanyl as opposed to any other factor, that that's where the district court was focused, and that was a misweighing of the 3553A factors. I don't think that's exactly right because I think the district court's focus on that still was a huge piece of the sentence that it chose. And so if that was inadequately explained, then we can't tell where the 240 months came from. I mean, one of the differences between this case and cases that the district court cited, where courts have approved of upward variances based on the dangerousness of fentanyl, is that often in those cases, the dangerousness of fentanyl does tie into the 3553A factors for that specific case. Because, for example, the fentanyl issue did cause a death. And so it's more grounded fully in the 3553A, and that's where it becomes an issue where the defendant was asking more for a reweighing. This is a categorical policy disagreement with the guidelines. And Kimbrough says that this court looks more carefully at that kind of justification than it does in the typical abusive discretion review when we're looking at substantive unreasonableness. Because it's different than the scenario where a district court is better positioned to evaluate facts and make findings related to 3553A in the specific case. It's a categorical expression. I don't think the fentanyl guidelines are correctly calibrated. So in a sense, it's more like a question of law. It's not really a question of weighing or a straight up 3553A application. Do you agree that the district court considered the 3553A factors in this case? Yes. Yes. And that's part of why it's not a procedural challenge, because the district court did follow the correct procedure. It's an issue with the substance of the explanation. So I think that's what places it squarely in the realm of substantive review. Ms. Settleman, can I ask you a question? And I don't want to cheat you out of your rebuttal, so you can either put it aside and do your rebuttal. But I will just tell you the question I have, and it's a follow up on my colleague Judge Hart's line of questioning. The same inquiry, but framed in a different way. If we think of it not in terms of preservation, but in terms of allowing the district court to exercise his or her discretion in a meaningful way under Doty, Fonce, Herrera, we've said repeatedly in precedential opinions recently that when we consider whether a district court abused his or her discretion, we consider the arguments and information presented to the district court. The district court, all of this discussion about the explanation, it's obviously what I think everybody agrees what Judge Johnson is saying is fentanyl is a lot worse than methamphetamine, actual, and so it makes no sense to treat it as more benign. And so you had an argument that in response to Judge Hart's that you were also foregoing consideration of the dosage and the pharmacological uses. Now, if someone had said that to Judge Johnson, he may very well have said, you know, that makes sense. If we think about consumable quantities, let's say if you take, if you use an ounce of marijuana to get high, or you use a gram of methamphetamine to get high, then we have to consider not only the insidious qualities of the drugs, but also the quantity of drugs that are being used on an individual basis. That might have made a lot of sense, but nobody told Judge Johnson that. So what he's saying is, on its face, eminently reasonable. If you had presented that argument to Judge Johnson, Judge Johnson is just exercising his discretion on the arguments that information presented to him. He thought methamphetamine was a lot more benign than fentanyl, and so he didn't have the benefit of your really excellent points about the dosage and the pharmacological uses of the drugs. Time's up. Sorry. No, you may. Okay. I agree that, you know, if Judge Johnson had received an objection, perhaps he could have provided more of an explanation. But in explaining a sentence, and particularly in imposing an upward variance, a massive upward variance, the burden is on the district court to explain what it's doing. And Judge Johnson is the person who brought in this question about methamphetamine. And so, once he was doing that, he needed to show his work so that we and Mr. Garley could understand why the guidelines were inappropriate in this case. And that is what's missing, and why this is an error under substantive review. And I genuinely apologize for depriving you of your rebuttal. Oh, that's okay. Thank you. Good morning, Your Honors. May it please the Court. My name is Amal Keeney, and I'm here for the United States. And I see that when doing my brief, I took a—I did not raise a preservation point. Perhaps I should have given some of the remarks here today, and I will keep that in mind in the future. I was more concerned about—I thought I could defeat the arguments just simply based on as they were presented, and I think I still can. The one is that—one argument that we've seen is that Judge Johnson relied on the meth guideline in imposing sentence. And that's one thing he mentioned during his explanation of the sentence. But he went through each of the 3553A factors and talked about a number of different things. So, for example, the seriousness of the defendant's criminal record, even though he was in the criminal history category one, and the callousness with which he acted after shooting the young boy. But isn't the problem here that if he enters in—it's not a procedural error. The guideline—let's assume the guideline calculation is what it is. There's a different argument attended to that in this case. But if he entered into the 3553A analysis in terms of the variance he wanted to impose with a different guideline in mind—he didn't use that guideline. He did a different guideline in mind because of what he thought about the difference between the drugs, but didn't really explain why he had that in mind—why should we be comforted that he then discussed the 3553A factors appropriately? Okay. Well, I think he mentions the meth guideline range, but I think you can look at this in the entire context of the way the issue developed, which is that the government, in its sentencing memorandum, went into detail about why fentanyl is more dangerous and cited Judge Johnson's opinion in Jimenez Marquez and reminded the district court, in the past you've said fentanyl makes no sense to treat fentanyl less seriously than meth when fentanyl is killing twice as many people as meth. Government brought it up again in his arguments, both at the sentencing hearing. And so I think sometimes when an issue is before the court, sometimes the court may refer to it in a more summary way, assuming that everyone there knows what is going on and what issue he's talking about. And at that point, defense counsel didn't stand up and say, Your Honor, what's this Jimenez Marquez you're talking about? What's going on? I don't know anything about it. I think that's my answer to it. I think everyone knew what the judge was getting at. And even though he might have, in an ideal world, explained a lot further, that's sometimes the way issues develop in courts when people kind of, based on prior discussions and briefing, people know what the issue is and may discuss them in a more summary way. So I think you can take comfort from that, that it's not like the issue was a surprise. It's not like the defense counsel didn't know what Judge Johnson was getting at. Everyone knew, I think. The other thing I would like to say is on the meth, in terms of referring to the meth guideline, Judge Johnson didn't just adopt that guideline and say, This is now the guideline I'm using. He mentioned it in passing during his discussion as an illustration of how meth, the guidelines, treat a similarly serious quantity of meth more seriously than fentanyl. And he evidenced his awareness of the proper guideline range by citing it. And I don't think there's any ground on this record, at least, that one could say that he made, he forgot about that and adopted a new guideline range. And I think this is one area where even if you say, this is substantive reasonableness, and there's no preservation requirement, a failure to develop the record can still interfere with this court's ability to review a claim that the district court was getting something wrong if it's not clear that he's getting it wrong. You used the phrase similar quantity. Did Judge Johnson actually use, not those exact words, similar amount, similar quantity? I don't remember him saying that. I could be wrong. And the reason I'm asking is because of your opponent's argument about the dosage. And if the judge is not comparing apples and apples, but apples and oranges, oranges are a lot more insidious than the apples, but you consume a quite different amount of the orange versus the apple, I'm not sure that it makes sense to determine whether or not the orange is a worse fruit than the apple. Right. He talked about the converted quantity. Now there's tables that are used in the sentencing guideline to determine whether what, for example, they might say 50 pounds of marijuana is a serious, at least in the guideline, in the sentencing commission's view as a much lesser quantity of another drug, and because that other drug is much more potent or more addictive and so forth. So I don't think he said that he used the exact quantity, but he referred to the conversion quantity. And I meant only to say that it was a similarly serious quantity, not the exact same. So he converted the fentanyl to so many, it's usually done in terms of marijuana, is it not? It comes up then, yes. So the fentanyl quantity was in the guidelines, or no, yeah, in the guidelines, an equivalent to the quantity of meth that he used, is that right? So he made that cross-reference, is that correct? Yes, he was trying to make, I think in his mind, what it appears, I don't know what was in his mind, but what it appears on the transcript is an effort to say, if you had been convicted of a similar amount, a similarly serious amount of meth, then you would have received a much higher, you would have had a much higher guideline. He wasn't saying if it had been three milligrams of meth versus three milligrams of fentanyl, there was already a conversion factor of what's the similar serious amount, similarly serious amount. Right, he was referring to a pre-existing conversion factor, okay. The only other point I really wanted to make is that I think that his explanation for the least dissatisfaction with the fentanyl guideline was more than sufficient, that fentanyl is killing more people than meth, and I think that's enough. Now, I don't think he had to show that the meth guideline was a platonic form of the guideline or anything like that. But why wasn't more required, given the extent of the variance here? Why wasn't more discussion of the meth guideline? Yeah, why wasn't more discussion of the reason for his policy disagreement required, given the extent of the variance? Well, I don't think more was required because that explanation that he did give is a very logical reason to vary upwards. If you have a drug that is regarded by the guidelines as less serious than another drug, but it's killing more people than that other drug, then there's a logical disconnect, and I think that's all he had to show. Now, that's not all he did rely on. Through his discussion, he relies on the criminal history and a number of other factors to justify the upward variance, so that's not the sole basis for his upward variance. I'm also prepared to answer your questions about the first issue if you would like, but if not, that's really all I have to say. I just have one question on the other issue, and it's only about prong three. So, as I understand it, your argument at prong three on the first issue is that if this was relevant conduct, then the base offense level would have been 43 before the acceptance of responsibility. It would have been a higher guideline range, I think, with a floor of 293 guidelines, and the only question I have is that's all well and good, and it might even be a good argument at prong four, but I don't get how it affects the requirement for concurrent sentences under 5G 1.3. Maybe he would have had a higher, a harsher sentence, and so maybe one question about whether or not the public would have an outcry that he got a more lenient sentence than he should have gotten, but that still has nothing to do with the applicability of 5G 1.3, does it? And that's the whole argument that the defendant has. Right. Well, I think the standard that this court has said in the past for prong three arguments is that there has to be showing that the sentence would have, there's reasonable probability that the sentence would have been lowered, and so to my mind . . . That's when we're talking about the harshness of the sentences, but she's not talking about the harshness of the sentences, she's talking about the fact that it was consecutive as opposed to concurrent. Right, but I think there I would say, I think the district court did exercise its discretion. It didn't consider 5G 1.3, that's true, but it did consider whether to run them concurrent or consecutive, and I think it's speculative on the prong three. Well, and I totally get that, but I probably did a poor job of asking that question because that's not what I meant to ask you. What I really meant to ask you was not whether or not you could defeat prong three, it's whether or not this one argument that the applicability of 2A 1.1 would foreclose the defendant's reliance on 5G 1.3 as a requirement for concurrent sentences because I don't see, they seem to be ships passing in the night. The applicability of 2A 1.1 in your argument about the exclusion for grouping for offenses that are in part two, you know, that all makes sense to me about why you argue that the defendant would have had an even harsher sentence if the murder were actually relevant conduct, but what I just don't get, that part of your argument that the applicability of 2A 1.1 would foreclose reliance on 5G 1.3 for concurrent sentences. Well, it's not that I think it would foreclose it, and I think that's the best, I think the point you're raising is the best point that someone could raise against my point three argument, which is that, if I understand it correctly, that the district court, if they were, if it was relevant conduct, the district court would still have had to face 5G, consider 5G 1.3c, and it didn't do so. And so just because there would have been a guideline range that might have been higher, that still wouldn't have foreclosed the concurrent sentence being imposed. So I think that's, I think that's a reasonable argument against my prong three argument. I think the prong three argument I'm making is that it's speculative that he would have gotten a consecutive, a concurrent sentence rather, when the judge already considered that, considered that issue. Now you might say, well, it's a different guideline range, so maybe, maybe that would have affected his decision. But I don't think you have to, even if you all disagree with me on the point, prong three argument, if you agree with me on either one, two, or four, I think you don't have to consider that. So are there any other questions about that? Thank you. I ask that you affirm. I'm pretty lenient this way. 30 seconds max. I just would like to point out that the methamphetamine guideline itself suffers from its own critiques. And so the judge's use of it as a comparator is sort of, it's trading one guideline that doesn't adequately capture harms for another. And his invocation of the case, Jimenez-Marquez, was limited to its expression of the view about the dangerousness and the difference between the two. It wasn't about whether methamphetamine actual was, was a good comparator. So there's still no explanation there. Thank you. Thank you, counsel. Case is submitted. Counsel are excused.